IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-CV-00485-REB-OES

MADINA BUHENDWA,

Plaintiff(s),

vs.

UNIVERSITY OF COLORADO AT BOULDER, et al.,

Defendant(s).

RECOMMENDATION FOR DISMISSAL

ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER
Date:  August 22, 2005

**INTRODUCTION AND BACKGROUND**

At the time that plaintiff filed her Complaint with the Court, she was not represented by counsel.  However, early in the proceedings, she obtained the assistance of Thomas Elliott, an attorney.  Mr. Elliott represented plaintiff during the bulk of this case, until he was permitted to withdraw on April 27, 2005.  Plaintiff again is now proceeding in this matter without counsel.

I have reviewed all of the pleadings that have been filed by plaintiff with the deference that is due to them pursuant to the case law.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Although a plaintiff who proceeds without counsel is entitled to a liberal reading of her pleadings, she is not entitled to have the court act as an advocate on her behalf.  Hall, 935 F.2d at 1110.

Plaintiff is a 43-year old pre-med student at the university of Colorado at Boulder. She is a native of the nation of Zaire, but she is now a permanent resident of the United States. Am.Compl. at ¶ 2. She alleges that she suffers from an unspecified disability due to injuries that she sustained while she was employed by the University. Id. at ¶ 4.

Plaintiff filed an amended complaint in which she attempted to assert a number of different claims under various civil rights statutes. On July 20, 2004, District Judge Robert E. Blackburn entered an order in which he granted in part defendant's motion to dismiss. Following his order, the claims remaining were the claims that plaintiff alleged pursuant to Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and the Rehabilitation Act of 1973. **Judge Blackburn's order established that plaintiff's claims were limited to discrete acts of discrimination that occurred within two years of the filing of her lawsuit. REB Order at ¶ IV.** Plaintiff named the University of Colorado and a number of individuals in the caption of her amended complaint. However, during the pretrial conference of August 18, 2005, plaintiff admitted that she had never served any of the individual defendants. She consented to the dismissal of these individuals from the lawsuit, and consented to a corresponding of the caption of this suit to identify the University of Colorado as the only defendant (henceforward, the defendant, the University or CU).

The University has filed a Motion for Summary Judgment that seeks the dismissal of all of plaintiff's remaining claims. In its motion, CU identified and summarized the claims

2

that remain at issue. Plaintiff filed a Response to defendant's motion, and does not dispute the University's summary of her claims. In its summary, the University states:

> Plaintiff bases her claim against the University under the Rehabilitation Act on five alleged incidents of discrimination: (1) that four University professors failed to honor letters of accommodation allowing her extra time to take exams, and (2) that the University denied her financial aid after she withdrew from certain classes because of her alleged disabilities.

CU's Mtn SJ at 10, citing Am.Compl. at ¶ ¶ 4, 5 & 12.

**Summary of recommendation.** The undisputed evidence reflects that the University is entitled to summary judgment in regard to all of plaintiff's claims. I will recommend to Judge Blackburn that he dismiss plaintiff's case in its entirety.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence in the record must be viewed in the light most favorable to the nonmoving party, and the nonmovant must be allowed the benefit of all reasonable inferences to be drawn from the evidence. Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10TH Cir. 1985).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for

summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Id. at 250. The substantive law identifies which facts are material. Id. at 248. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way consistent with this purpose. Celotex, 477 U.S. at 323-24.

### McDONNELL DOUGLAS SHIFTING BURDEN FORMULA

Plaintiff has presented no direct evidence of discrimination. Therefore, her claim can only be demonstrated, if at all, through circumstantial evidence. When a plaintiff relies on circumstantial evidence to show discrimination, courts are required to apply the three-step burden-shifting framework set forth in McDonnell Douglas and its progeny. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-07 (1973); Garrett v. Hewlett Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (holding that McDonnell Douglas applies both to Title VII and ADEA claims); Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1212 (10th Cir. 2003) (McDonnell Douglas applies to retaliation claims).

McDonnell Douglas first requires plaintiff to establish a prima facie case of prohibited or discriminatory action by the named defendant. The "burden of establishing a prima facie case . . . by a preponderance of the evidence" is "not onerous." McCowan

v. All Star Maint., Inc., 273 F.3d 917, 922 (10th Cir. 2001) (internal quotation marks omitted).  Once plaintiff makes a prima facie showing, the burden shifts to defendant to state a legitimate, "nondiscriminatory reason" for its adverse action.  Wells, 325 F.3d at 1212. If defendant meets this burden, then summary judgment is warranted unless plaintiff can show that there is a genuine issue of material fact as to whether the proffered reasons are pretextual.  *See* Jones v. Denver Post Corp., 203 F.3d 748, 756 (10th Cir. 2000).

### DISCUSSION

### 1

Plaintiff clearly is an educated woman.  In her Response, she points out that "[b]y October 2001, the plaintiff had an above 2.00 campus GPA [and] attempted 200 credit hours in the undergrad program. . . ."  Resp. at 9.  The University's records reflect slightly fewer hours, and a somewhat diminished GPA, namely, 197 hours with a 1.98 GPA (CU Mtn SJ at 7), but this slight difference does not detract from the fact that plaintiff has completed all, or close to all, of the hours required for graduation from the University of Colorado.

Nevertheless, in spite of this education, plaintiff has submitted a Response to the motion for summary judgment that is essentially useless.  First, the evidence contained in plaintiff's exhibits, if there is any, is essentially unavailable.  Plaintiff has attached to her Response a list of the exhibits that she has submitted, and they are lettered from A to Z. However, in the text of her Response, plaintiff never refers to any exhibit by a letter. Instead, she uses a word or phrase, such as "see final," "see grade sheet Allencls.XlS," or "see syllabus."  These three phrases appear just on the first two pages of her Response,

and none of them can be easily identified as relating to any particular exhibit. For example, no letter describes an exhibit that contains the words "syllabus," "grade sheet" or "Allencls XlS." This problem persists throughout her seventeen-page Response. In short, plaintiff's vaguely-worded references are completely inadequate to direct the reader to any particular exhibit.

Plaintiff's failure to be specific in her directions to exhibits is no small problem. Her exhibits consist of some 250 pages of documents. Neither counsel for defendants nor the court are required to root about in such a pile of documents looking for the facts that plaintiff might be thinking about as possible support for her claims for relief. "Without a specific reference, [courts] will not search the record in an effort to determine whether there exists dormant evidence. . . ." Gross v. Burggraf Construction Co., 53 F.3d 1531, 1546 (10th Cir. 1995); *see also*, Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (judges have no responsibility "to scour the record" in search of the facts upon which a party relies); Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992) (same). On a motion for summary judgment, "'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record.'" Cross v. Home Depot * * * *quoting* Downes v. Beach, 587 F.2d 469, 472 (10th Cir. 1978); *see also* Mitchell v. City of Moore, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him.").

Because plaintiff has failed to provide adequate references to her exhibits, I have ignored them. To the extent that her exhibits may contain facts that create issues in regard

6

to summary judgment, she has rendered her facts unavailable and unusable.

Second, plaintiff's Response consists of a seventeen-page narrative by her in which she describes past events as she remembers them. However, plaintiff's recollection of events is inadmissable and useless unless she can direct the attention of the court or counsel to a place in her deposition where she related those same facts in response to questioning by counsel for the University. Nowhere in her Response does plaintiff provide any such references. Because none of plaintiff's statements in her Response are supported by references to testimony in the record, her efforts to "testify" through her Response, so to speak, must be ignored. This means that virtually all of what plaintiff states in her Response is virtually useless.

Finally, even if the court considers the statements made by plaintiff in her Response, and I have made some effort to do so, none of her statements create or raise a genuine issue of fact with regard to the claims made by the University in its Motion for Summary Judgment. Whether plaintiff's claims are viewed in the light of the McDonnell Douglas shifting formula or by the usual summary judgment standards, plaintiff has failed under any standards to show a *prima facie* case of discrimination. Once the University properly supported its motion for summary judgment, the burden shifted to plaintiff to set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. Plaintiff has failed to do so.

The Supreme Court has emphasized that McDonnell Douglas was never intended to set an inflexible rule, and the Tenth Circuit has stated that "[c]ollapsing the four-part

prima facie case of McDonnell Douglas into a three-part test may occasionally be helpful when addressing discrimination claims that either do not fall into any of the traditional categories . . . or *present unusual circumstances*." Plotke v. White, 405 F.3d 1092, 1100 (10th Cir. 2005) (*quoting* Chertkova v. Connecticut Gen. Life Ins., 92 F.3d 81, 91 (2d Cir. 1996) (emphasis added by Tenth Circuit). The critical *prima facie* inquiry in all cases is "whether the plaintiff has demonstrated that the adverse . . . action occurred under circumstances which give rise to an inference of unlawful discrimination." Kendrick v. Penske Transportation Services, Inc., 220 F.3d 1220, 1227 (10th Cir. 2000). Plaintiff has presented no evidence that would tend to show that any adverse actions taken in regard to her were taken under circumstances "which give rise to an inference of unlawful discrimination."

## 2. Rehabilitation Act.

### (a) denial of accommodation for examinations.

To prove a cause of action under the Rehabilitation Act, plaintiff must prove that (1) she is a handicapped or disabled person as defined by the Act; (2) she is otherwise qualified for the benefit she sought; (3) she was discriminated against solely by reason of her handicap; and (4) the program or activity receives federal assistance. Johnson by Johnson v. Thompson, 971 F.2d 1487, 1492 (10th Cir. 1992), *cert. denied*, 113 S.Ct. 1255 (1993).

Plaintiff's claim under the Rehabilitation Act is premised upon two claims. First, she alleges that four CU professors – Professors Swierckowki, Asirvatham, Hohfelder and Rubin – discriminated against her by failing to honor letters of accommodation that had

8

been issued by the Office of Disabilities Services, and by otherwise failing to accommodate

her alleged disabilities. Second, she alleges that the University violated her rights under the Act because it denied financial aid to her.

For purposes of the Motion for Summary Judgment, the University does not dispute that plaintiff is disabled, and does not dispute that the University receives federal assistance. The University focuses its motion and exhibits on the absence of any evidence in the record that would demonstrate that the University discriminated against plaintiff on the basis of any disability.

**Swierczkowki.** Plaintiff admitted during her deposition that she never provided a letter of disability accommodation from the Office of Disability Services to Professor Swierczkowki. *See* CU's Reply at 3, n. 2, and citations provided there. The University points out that the only evidence presented by plaintiff, such as it is, is contained in her Exhibit A. The University points out that Exhibit A contains a letter that is unauthenticated, and that is addressed to a professor "Lenski," not Professor Swierczkowki. The letter is not a letter of accommodation for a recognized disability under the Rehabilitation Act. Instead, it is a letter from the Program Coordinator for "English as a Second Language," and it merely requests, "upon your approval," that plaintiff be given some consideration for plaintiff to receive additional time for exams because English is her second language. *See* CU Mtn SJ at 4, citing Attach. A at 83:1-23. The letter lends no support to plaintiff's claim of discrimination, and plaintiff has failed to show that this professor had any knowledge

9

that plaintiff had a need for accommodation.

Plaintiff has argued that Prof. Swierczkowki also refused to disregard her failure to take six out of the eleven quizzes that he administered during the term. She asserts that the professor denied this opportunity to her, but provided it to others. Resp. at 2. However, plaintiff failed to identify any evidence that any students were provided any such benefit by the professor.

**Professor Asirvatham.** Plaintiff argues that this professor failed to honor the accommodation that had been approved by the Office of Disability Services. That Office informed Professor Asirvatham that plaintiff's disability was to be accommodated by providing her with extended time to take examinations. The extended time was to be computed as 1½ times that which would be provided to non-disabled students. Resp. at 4. Plaintiff alleges that she was not provided 1½ times the regular time in which to complete the final exam.

Professor Asirvatham sent an e-mail to plaintiff in which he acknowledged receipt of the letter from the Office of Disability Services, and stated:

> The Final Exam is scheduled to start at 7:30 a.m. and end at 10:00 a.m. * * * Extended time on the Final Exam presents a slight problem. Since the exam starts at 7:30 a.m., we can plan to start you in the Media Room of the Events Center at 7:00 a.m. and allow you to finish the exam by 10:30 a.m. The next final exam starts at 10:30 a.m. according to University policy, and we may not be allowed to stay in the Media Room after 10:30 a.m. You will still get an EXTRA HOUR on the Final Exam. I hope you can cooperate in this matter.

CU Mtn SJ, Attach. C.

Plaintiff admits that she arrived at the examination room at 7:30 a.m., and not 7:00

a.m. Resp. at 5. She complains that the e-mail from the professor was unclear with regard to the time that the Final Exam would start. However, I fail to see any ambiguity in the professor's statement that plaintiff could "plan to start" the examination at 7:00 a.m. Having failed to take advantage of almost one-half of the extra time that was provided to her, plaintiff can hardly be heard to complain if she did not receive an extra fifteen minutes after the hour of 10:30 a.m. Additionally, she has presented no evidence that demonstrates that the time provided to her was shaved for discriminatory reasons.

Plaintiff argues that she did not receive adequate instructions about the location of the room in which the test was to be administered. Resp. at 5. Apart from the fact that plaintiff has pointed to no admissible evidence to support this conclusory statement, such as her own deposition, plaintiff admits that when she arrived at the room where the exam was being administered "all the students with special needs were there. . . ." Resp. at 6. Plaintiff has not shown that she was singled out as a disabled student for discriminatory treatment in allegedly failing to inform her of the location of the room where the examination was to be conducted.

**Professors Hohlfelder and Rubin.** Plaintiff argues that she was entitled to higher grades from these two professors. However, she admits that she failed to show up at all for the final exam in each of their classes. CU Mtn SJ at 6, *citing* Attach. A, 255:7-13, 270:1-15. As a result, plaintiff has presented no admissible evidence that would tend to demonstrate that she was denied the accommodation that had been provided by the University, namely, extended time for examinations.

### (b) denial of financial aid.

The University has presented undisputed evidence that the denial of financial aid to plaintiff was based not upon any disability, but upon plaintiff's failure to meet the terms of the Reasonable Academic Progress ("RAP") Contract that plaintiff signed on December 17, 2001. *See* id. at 13-14, and exhibits cited there. Under the terms of the RAP contract, all students who receive financial aid must meet three minimum requirements. They must: (1) maintain at least a 2.0 GPA; (2) complete 67 percent of all attempted coursework; and (3) attempt no more than 180 credit hours. CU Undisputed Fact (l). By the fall 2001 semester, plaintiff had a 1.98 campus GPA, attempted 197 credit hours in her undergraduate program and was no longer eligible for financial aid. CU Undisputed Fact (m). The terms of the contract required plaintiff to complete 100 percent of her coursework for the fall semester to remain eligible for financial aid. Undisputed Fact (n).

Plaintiff failed to complete two of her fall 2001 semester courses. CU Undisputed Fact (o). The University therefore discontinued plaintiff's financial assistance. Id.

Plaintiff has presented no admissible evidence that would demonstrate a genuine issue of fact with regard to her failure to complete 100 percent of her coursework, or that would demonstrate that financial aid was denied to her because of her disability. Plaintiff seems to argue that her failure to comply with the RAP contract should be excused because she had submitted a request to withdraw from one of her classes before she had signed the RAP contract, and because she had not yet been withdrawn from another of her classes at the time that the Office of Financial Aid denied financial aid to her for the spring 2002 semester. Resp. at 7. Neither of these arguments demonstrates either compliance by plaintiff with the requirements of the contract, or discrimination by the University

because of plaintiff's disability.

### 3. Plaintiff's claims under Titles VI and IX.

Plaintiffs claims under Titles VI and IX are based solely on two alleged incidents of discrimination: (1) the University's involuntary withdrawal of Plaintiff from her fall 2002 semester classes in August of 2002; and (2) her suspension in the spring of 2003 for violating the University's Standards of Conduct. Plaintiff has failed to present any admissible evidence that would demonstrate that the University's decisions on these matters were made because of plaintiff's race, color, national origin or sex.

To establish a claim of discrimination under either of these statutes, plaintiff must prove (1) that she was excluded from participation in, denied the benefits of, or subjected to discrimination in a federally funded program; (2) that the unfavorable treatment was solely on the basis of plaintiff's race, color, national origin or sex; and (3) that the program at issue receives federal assistance. 42 U.S.C. § 23000d; 20 U.S.C. § 1681; *see also* Baker v. Board of Regents of State of Kan., 99 F.2d 628 (10th Cir. 1993). For purposes of its motion for summary judgment, the University does not deny that it receives federal assistance.

**1. Withdrawal from class.** Plaintiff was involuntarily withdrawn from her classes in August of the fall semester of 2002. The University explains at page 18 of its Motion for Summary Judgment, with accompanying citations to undisputed facts, that the sole reason for plaintiff's involuntary withdrawal from the fall classes was plaintiff's failure to pay an outstanding tuition balance. Plaintiff had paid her tuition for that term, but her check had been dishonored due to insufficient funds. Plaintiff knew a month before she was

withdrawn from classes that her check had been dishonored, but failed to correct the problem. She was advised on several occasions to pay the balance, or she would not be permitted to register. Ultimately, upon her failure to pay the bill, plaintiff was informed that she had been withdrawn from classes. The day after she received this notice, plaintiff appeared in person, and paid the total amount due. She was immediately reenrolled, with virtually no interruption of studies.

The total period during which plaintiff was withdrawn from class was one day. Plaintiff admits that she does not know if the individual who withdrew her from classes knew her race, gender or national origin. CU Undisputed Fact (t). Thus, the amount of time that plaintiff was affected by the decision to withdraw her is *de minimis*. And even if it was not, plaintiff has presented no admissible evidence that would tend to demonstrate that the decision was based upon her race, gender or national origin.

**2. Suspension for violating standards of conduct.** Plaintiff was suspended from the University for violating provision 13 of the Student Code of Conduct. CU Mtn SJ, Attach. F at ¶¶ 2-3. Plaintiff was found to have locked her disabled daughter alone in her bedroom for several hours while plaintiff left the apartment. Id.; CU Undisputed Fact (w). Provision 13 of the Student Code of Conduct provides that any person found responsible for "threatening or endangering the health or safety of another person" may be subject to discipline. Id. at ¶ 2.

The University explains at page 19 of its motion for summary judgment, with citations to appropriate supporting facts or documents, that the Director of Judicial Affairs considered the facts with regard to this incident, and concluded that plaintiff had

endangered her daughter. A Judicial Affairs Appeals Officer reviewed the Director's suspension, and determined that the decision was consistent with the Standard of Conduct set forth in the Code. These undisputed facts demonstrate that plaintiff's suspension was consistent with University practices, and consistent with the way in which other students in like circumstances would have been treated. CU Undisputed Fact (z).

Plaintiff has pointed to no evidence in the record that would tend to show that the decisions of either the Director of Judicial Affairs or the Appeals Officer was based in any way upon her race, gender or national origin. *See* CU Undisputed Fact (y). In her Response, she does little more than to engage in a confusing discussion about an eviction proceeding that occurred in September of 2000, and which is not at issue in this case. Resp. at 11. At any rate, as I have stated, because the statements of plaintiff in her Response lack any documentation or support in the record, such as her own deposition, her testimonial statements must be ignored.

Therefore, plaintiff has presented no evidence that shows any discriminatory intent by any of the decision-makers, and has presented no evidence that shows that she was treated any differently than other students who were similarly-situated to her. She has failed to provide any evidence to support the claims that she brought under Titles VI and IX.

**SUMMARY**

The University has presented support for its request for summary judgment with appropriate exhibits, documents and references to plaintiff's own deposition testimony. Plaintiff has failed to present any admissible evidence that would tend to demonstrate a

genuine issue of material fact with regard to any of the claims made by the University in its Motion for Summary Judgment. The undisputed evidence, as summarized above, shows that the University is entitled to have summary judgment entered on its behalf in regard to all of the remaining claims in this matter.

## RECOMMENDATION

I therefore **RECOMMEND** that Judge Blackburn **GRANT** the University's Motion for Summary Judgment [Doc. 63-1, filed July 6, 2005].

As noted above, during the pretrial conference conducted before me on August 18, 2005, plaintiff voluntarily dismissed the claims that she had asserted against the individuals named in her amended complaint. Because the University is the only remaining defendant, I recommend that plaintiff's amended complaint be **DISMISSED**.

**Advisement to plaintiff.** Plaintiff is entitled to seek review or reconsideration of my recommendation by filing an "objection" within ten days. Failure to file such an objection or appeal within ten days will result in the waiver by plaintiff of plaintiff's right to present such an objection to the district court judge. A complete advisement of plaintiff's right to appeal or object is attached to this Recommendation on a page which is entitled "Advisement Under Fed.R.Civ.P. 72."

Dated at Denver this day of August 22, 2005

BY THE COURT:

s/ O. Edward Schlatter
_____
O. Edward Schlatter
U.S. Magistrate Judge

**ADVISEMENT UNDER FED. R. CIV. P. 72**

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. Thomas v. Arn, 474 U.S. 140, 155 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).